# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>LATRESE & KEVIN ENTERPRISES INC., )<br>a Florida Corporation, also doing business as )<br>HARGRAVE & ASSOCIATES FINANCIAL )<br>SOLUTIONS, )<br><br>LATRESE HARGRAVE, also known as, )<br>Latrese V. Williams, individually and as an )<br>officer of Latrese & Kevin Enterprises Inc., and )<br><br>KEVIN HARGRAVE, SR., individually and )<br>as an officer of Latrese & Kevin Enterprises Inc. )<br><br>Defendants. )<br> ) | **Case No. 3:08-cv-1001-J-34JRK** |

## TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF AND ORDER SETTING PRELIMINARY INJUNCTION HEARING

This cause is before the Court on Plaintiff's Motion for a Temporary Restraining Order with Conduct Prohibitions, Asset Freeze, Order to Preserve Records and Provide Business and Financial Information, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. No. 3; Motion). On October 20, 2008, at 3:14 p.m., Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Injunctive and Other Equitable Relief (Dkt. No. 1) pursuant to Section 13(b) and 19 of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 53(b) and 57b, Section 410(b) of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679h(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, as well as its Motion and its Memorandum in Support of Motion for Temporary Restraining Order with Asset Freeze and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. No. 4; Memorandum), seeking a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Having considered the Complaint, Motion, Memorandum, declarations and exhibits filed in support thereof, as well as the arguments of the counsel presented at the hearing held on October 22, 2008, and in accordance with Rule 65(b) and Local Rule 4.05, as well as the applicable statute, 15 U.S.C. § 53(b), the Court makes the following findings for purposes of resolving this Motion:

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that the Court will have jurisdiction over all of the parties;

2.      There is good cause to believe venue properly lies with this Court;

3.      The parties agreed at the hearing that, for the purposes of this Motion, 15 U.S.C. § 53(b) provides the Court with the authority to enter a temporary restraining order in this case, and the parties further agreed that the standard provided in that statute, and as recited by Plaintiff in its Memorandum, is applicable to this Motion.

4.      There is good cause to believe that Defendants have engaged in and are likely to continue to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679-1679j, and the

Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and that Plaintiff has demonstrated that it is substantially likely to prevail on the merits of this action;[1]

5.       Plaintiff provided notice to Defendants that it intended to file the action and seek a temporary restraining order several hours before doing so.  <u>See</u> Plaintiff's Notification to Defendants of the Filing of Lawsuit and Request for a Temporary Restraining Order (Dkt. No. 20).  As a result, at the time the action was filed, counsel for Defendants entered a Notice of Appearance, and the Court set a hearing for October 22, 2008, wherein counsel for all parties was present.  Although notice of this dispute was provided and the Court heard some argument on the Motion, the Court is satisfied that notice and a full hearing in accordance with Rules 4 and 65 of the Federal Rules of Civil Procedure, as well as the Court's Local Rules, should not be required prior to the issuance of this Order.

6.       Based on the verified papers of Plaintiff, which have provided specific facts, the Court finds that there is good cause to enter a temporary restraining order in order to prevent continued unlawful activity, to preserve the Court's ability to grant effective final relief in this action, and to prevent concealment by Defendants of their assets or corporate and/or business records.

7.       Based solely on the evidence and materials submitted by Plaintiff, the Court finds, for purposes of this Motion, that Defendants have engaged in a concerted course of

---

[1]       Consistent with temporary restraining order practice, this finding is based solely on the verified papers of Plaintiff and is made for the purpose of resolving the Motion.  This conclusion does not foreclose the argument at the hearing on a motion for preliminary injunction that Plaintiff cannot establish a substantial likelihood of success on the merits.

prohibited activity designed to take money from consumers based upon false and deceptive acts and practices in connection with the sale of credit repair services and advance fee credit cards in violation of Section 5 of the FTC Act, the CROA and the TSR. Thus, there is good cause to believe that Defendants are likely to continue to engage in these acts as well as attempt to conceal the scope of their illegal actions to avoid returning their ill-gotten gains to consumers injured by their unlawful practices, unless Defendants are restrained and enjoined from doing so by Order of this Court. Furthermore, it is reasonably necessary to freeze Defendants' assets as well as to appoint a temporary receiver over Latrese & Kevin Enterprises and Hargrave & Associates Financial Solutions in order to preserve this Court's ability to award complete and meaningful relief at the conclusion of this litigation.

8.      Based upon a review of Plaintiff's submissions, the Court finds that the balance of the equities also weighs in favor of allowing expedited discovery in order to prevent the concealment and/or destruction of these records. Likewise, it is reasonably necessary to order Defendants to preserve all business and financial records in order to permit Plaintiff, through discovery, to identify victims, quantify injury to consumers, and demonstrate the breadth and depth of Defendants' illegal practices.

9.      Therefore, upon weighing all of the equities and considering Plaintiff's likelihood of success, the Court finds that the entry of a temporary restraining order, which includes an asset freeze and appointment of receiver, is in the public interest.

10.      No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

11.     Accordingly, for these reasons, it is hereby **ORDERED** that Plaintiff's Motion for a Temporary Restraining Order with Conduct Prohibitions, Asset Freeze, Order to Preserve Records and Provide Business and Financial Information, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. No. 3) is **GRANTED, in part, and DENIED, in part**, as follows.

## DEFINITIONS

For purposes of this Temporary Restraining Order, the following definitions shall apply:

1.     **"Asset"** or **"assets"** mean any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels' leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.     **"Assisting others"** means knowingly providing any of the following goods or services to another entity:  (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any marketing material; (3) providing names of, or assisting in the generation of, potential customers; or (4) performing marketing or billing services of any kind.

3.     **"Individual Defendants"** means Latrese Hargrave and Kevin Hargrave, Sr., or any alias of these individuals.

4.      "**Corporate Defendant**" means Latrese & Kevin Enterprises Inc. doing business as Hargrave & Associates Financial Solutions, and its successors and assigns or any other fictitious "doing business as" name.

5.      **"Defendants"** mean all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

6.      "**Credit repair organization**" means any person or entity that uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person or entity can or will sell, provide, or perform) any credit repair service.

7.      "**Credit repair service**" means any service, in return for payment of money or other consideration, for the express or implied purpose of:  (1) improving any consumer's credit record, credit history, or credit rating; or (2) providing advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating.

8.      "**Credit-related products, programs, or services**" means any product, program, or service which is advertised, offered for sale, or sold to consumers as a method by which consumers may establish or obtain any extension of credit or credit device, including, but not limited to, credit cards, loans, or financing, or as a method to consolidate or liquidate debts.

9.      **"Document"** is synonymous in meaning and equal in scope to the term as defined in Federal Rule of Civil Procedure 34(a), and includes both documents and electronically stored information, including, but not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any

medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or nonidentical copy is a separate document within the meaning of this term.

10. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

11. **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

12. **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

13. The term "**and**" also means "**or**," and the term "**or**" also means "**and**."

14. **"Telemarketing"** means any plan, program or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services by means of the use of one or more telephones.

15. **"Seller,"** "**telemarketer**," and **"inbound telephone call"** are as defined in Section 310.2 of the Telemarketing Sales Rule, 16 C.F.R. § 310.2.

## PROHIBITED BUSINESS ACTIVITIES

### I. INJUNCTION AGAINST MISREPRESENTATIONS IN VIOLATION OF THE FEDERAL TRADE COMMISSION ACT

**IT IS HEREBY ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any goods or services, including, but not limited to, credit repair services or other credit-related product, program, or service, Defendants and each of their

officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from making any false or misleading representation, or assisting others in making any false or misleading representation, either orally or in writing, expressly or by implication, of any material fact, including, but not limited to:

A. that Defendants can permanently remove negative information from consumers' credit reports or profiles, even where such information is accurate and not obsolete;

B. that Defendants or any other credit repair organization can improve substantially consumers' credit reports, credit profiles, or credit scores;

C. that after paying a fee, Defendants will provide consumers with, or arrange for consumers to receive, a major credit card, such as a MasterCard or Visa; and

D. any fact that is material to a consumer's decision to purchase any good or service from any Defendant.

## II. INJUNCTION AGAINST VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services to consumers, Defendants and each of their officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from violating or assisting others in violating the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j,

as presently enacted or as it may hereafter be amended, by, including, but not limited to:

    A.     Violating 15 U.S.C. § 1679b(a)(3) by making or using untrue or misleading representations to induce consumers to purchase their services, including, but not limited to, misrepresenting that a credit repair organization can improve substantially consumers' credit reports, credit profiles, or credit scores by permanently removing negative information from consumers' credit reports, even where such information is accurate and not obsolete; and

    B.     Violating 15 U.S.C. § 1679b(b) by charging or receiving money or other valuable consideration for the performance of credit repair services that Defendants have agreed to perform before such services are fully performed.

## III.    INJUNCTION AGAINST VIOLATIONS OF THE TELEMARKETING SALES RULE

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any credit-related product or service, Defendants and each of their officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from violating or assisting others in violating the Telemarketing Sales Rule, 16 C.F.R. § 310, as presently enacted or as it may hereafter be amended, by, including, but not limited to:

Violating Section 310.4(a)(4) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(4), by requesting or receiving payment of any fee or consideration in advance of obtaining or arranging an extension of credit when they have guaranteed or represented a high

likelihood of success in obtaining or arranging an extension of credit of a person.

## IV. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and each of their officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from:

A.    Assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, artwork, automobiles, coins, consumer lists, contracts, precious metals, shares of stock, uncashed checks, or other assets, wherever located, that are:

1.    owned or controlled by, or in the actual or constructive possession of any Defendant;

2.    owned or controlled by, or held for the benefit of, directly or indirectly, any Defendant, in whole or in part;

3.    held by an agent of any Defendant as a retainer for the agent's provision of services to any Defendant; or

4.    owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common

control with, any Defendant, including, but not limited to, any asset held by or for any Defendant in any account at any bank or savings and loan institution, credit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, check processor, money broker, or other financial institution or organization of any kind;

B.      Opening or causing to be opened any safe deposit boxes or commercial mail boxes titled in the name of any Defendant, or subject to access by any Defendant;

C.      Incurring charges or cash advances on any credit card, debit card, or lines of credit issued in the name, individually or jointly, of any Defendant or any entity directly or indirectly owned, managed, or controlled by any Defendant;

D.      Obtaining a personal or secured loan encumbering the assets of any Defendant, or subject to access to any Defendant; and

E.      Incurring liens or other encumbrances on real property, personal property, or other asset held in the name, individually or jointly, of any Defendant, or any entity directly or indirectly owned, managed or controlled by any Defendant.

F.      Notwithstanding the provisions of this section, Defendants shall transfer all assets of Latrese & Kevin Enterprises, Inc., and Hargrave & Associates Financial Solutions pursuant to Paragraph XI of this Order.

The assets affected by this section shall include both existing assets and assets acquired after the effective date of this Order only if such assets are derived from the activity prohibited

by this Order or derived from any other violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the CROA, 15 U.S.C. §§ 1679-1679j, or the TSR, 16 C.F.R. Part 310.

**IT IS FURTHER ORDERED** that, notwithstanding anything in this Order to the contrary, Defendants Latrese Hargrave and Kevin Hargrave, Sr., may spend up to $1,500.00 for necessary living expenses in the interim period between the time of service of this Order on them and the preliminary injunction hearing, provided that Defendants produce an accounting of these expenditures to the Court at the preliminary injunction hearing.

## V.    DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that, effective immediately upon notification of this Order, any financial or brokerage institution, escrow agent, money market or mutual fund, title company, commodity trading company, common carrier, storage company, trustee, commercial mail receiving agency, merchant account processor, mail holding or forwarding company, creditor or credit card issuer, or any other person or entity having possession, custody or control of any assets or documents of any Defendant, or of any account, safe deposit box, or other asset of any Defendant, either individually or jointly, or held on behalf of or for the benefit of any Defendant, at any time since October 23, 2003, shall:

A.    Hold and retain within its control and prohibit the assignment, dissipation, encumbrance, pledge, removal, sale, transfer, withdrawal, or other disposal of any of the assets or other property held by, under its control, or on behalf any Defendant in any account maintained in the name of, or for the benefit or use of, any Defendant, in whole or in part, except as directed by further order of this Court, or, for assets held in the name

of the Receivership Defendants, as directed by the Temporary Receiver appointed herein;

B.      Deny Defendants access to any safe deposit boxes, commercial mail boxes, or storage facilities that are titled in the name, individually or jointly, of any Defendant, or otherwise subject to access by any Defendant.  Notwithstanding this subsection, the Temporary Receiver appointed herein shall be provided with access to any safe deposit box individually or jointly titled in the name of, subject to access by, or held for the benefit of any Receivership Defendant.

C.      Provide to the Temporary Receiver appointed herein and the Commission, within five (5) business days of notice of this Order, a sworn statement setting forth:

1.      The identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or to which any Defendant is a signatory, or which is held on behalf of, or for the benefit or use of, any Defendant or subject to any Defendant's control, including all trust accounts on behalf of any Defendant or subject to any Defendant's control;

2.      The balance of each such account, or a description and appraisal of the value of such asset, as of the close of business on the day on which notice of this Order is received, and, if the account or asset has been closed or removed, or more than $1,000 withdrawn or transferred from it within the last ninety (90) days, the date of the closure or removal of funds, the total funds removed or transferred, and the name and account number of the person or entity to whom

such account, funds, or other asset was remitted; and

     3.     The identification and location of any safe deposit box, commercial mail box, or storage facility that is titled in the name, either individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant.

D.     Upon request by the Temporary Receiver or the Commission, provide the Temporary Receiver or Commission with copies of all records or other documents pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs, within five (5) days of said request. For the purposes of this section, the Temporary Receiver or the Commission may properly serve this Order on any financial or brokerage institution, business entity or person that holds, controls or maintains custody of any account or asset of any Defendant or has held, controlled or maintained custody of any account or asset of any Defendant at any time since October 23, 2003, by facsimile transmission, hand delivery, or overnight carrier.

E.     Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including the transferring of funds.

## VI.     REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that, within five (5) business days following service of this Order, Defendants and each of their officers, agents, servants, employees, attorneys, and all

other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall:

A.      Repatriate to the United States all funds, documents or assets in foreign countries held either: (1) by any Defendant; (2) for the benefit of any Defendant; or (3) under the direct or indirect control, jointly or individually, of any Defendant;

B.      The same business day as any repatriation, (1) notify counsel for the Commission of the name and location of the financial institution or other entity that is the recipient of such funds, documents or assets; and (2) serve this Order on any such financial institution or other entity; and

C.      Provide the Temporary Receiver and the Commission with a full accounting of all funds, documents, and assets outside of the territory of the United States held either: (1) by the Defendant; (2) for the Defendant's benefit; or (3) under the Defendant's direct or indirect control, individually or jointly.

## VII.   INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants and each of their officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, is hereby **TEMPORARILY RESTRAINED AND ENJOINED** from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding section of this Order, including, but not limited to:

A.      Sending any statement, letter, fax, e-mail or wire transmission, or telephoning or

engaging in any other act, directly or indirectly, that results in a determination by a

foreign trustee or other entity that a "duress" event has occurred under the terms of a

foreign trust agreement, until such time as all assets have been fully repatriated pursuant

to the preceding section of this Order and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related

entities of either the existence of this Order, or of the fact that repatriation is required

pursuant to a Court Order, until such time as all assets have been fully repatriated

pursuant to the preceding section of this Order.

## VIII.   APPOINTMENT OF A TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that   Lewis B. Freeman          is appointed as

Temporary Receiver for Latrese & Kevin Enterprises, Inc., and Hargrave & Associates Financial

Solutions, and their subsidiaries and affiliates (each a "Receivership Defendant," and

collectively "the Receivership Defendants"), with the full powers of an equity receiver.  The

Temporary Receiver shall be the agent of this Court in acting as Receiver under this Order, with

directions and authority to:

A.      Assume full control of the Receivership Defendants and all power of the

Receivership Defendants' directors, officers and managers, and remove all Individual

Defendants, and any officer, independent contractor, employee, attorney or agent of the

Receivership Defendants, from control and management of the Receivership Defendants;

B.      Take immediate and exclusive custody, control, and possession of all the funds,

property, mail and other assets of, in the possession of, or under the control of the Receivership Defendants, wherever situated, including, but not limited to: (1) 3450 Dunn Avenue, Suite 101, Jacksonville, Florida 32218; and (2) 1313 E. Broad Street, Columbus, Ohio 43205-3500. The Temporary Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Receivership Defendants, including documents related to customers or clients whose interest are now held by or under the direction, possession, custody or control of the Receivership Defendants. By this authorization and empowerment, this Court specifically determines that the Temporary Receiver, as an agent of this Court, shall not be barred from bringing any action due to the doctrine *in pari delicto*;

C.     Take all steps necessary to secure the business premises and any storage or other facilities of the Receivership Defendants, including, but not limited to premises located at (1) 3450 Dunn Avenue, Suite 101, Jacksonville, Florida 32218; and (2) 1313 E. Broad Street, Columbus, Ohio 43205-3500;

D.     Preserve, hold and manage all Receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to customers or clients;

E.     Prevent the withdrawal or misapplication of funds entrusted to the Receivership Defendants, and otherwise protect the interests of customers or clients;

F.      Manage and administer the Receivership Defendants by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

G.      Collect all money owed to the Receivership Defendants;

H.      Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the Receivership Defendants or to carry out his or her duties pursuant to this Order.  By authorization and empowerment, this Court specifically determines that the Temporary Receiver, as an agent of this Court, shall not be barred from bringing any action due to the doctrine *in pari delicto*;

I.      Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order, including entities of which the Temporary Receiver is a shareholder;

J.      Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts; and

K.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this

Order.

L.      Prepare and submit a report to this Court and to the parties, not less than three (3)

days prior to the scheduled Preliminary Injunction Hearing.  Such report may include all

information the Temporary Receiver determines is material to the Preliminary Injunction

Hearing, but must include an accounting of all assets determined to exist as of the date

of the report;

M.      The Temporary Receiver may, at any time upon prior notice to all parties to this

action, apply to this Court for further or other instructions or additional powers,

whenever the Temporary Receiver deems such other instructions or additional powers

to be necessary to properly and legally perform the duties of the office of Temporary

Receiver, and to maintain, operate, preserve, and protect the receivership estate; and

N.      Upon notice to this Court and all parties, the Temporary Receiver shall be

permitted to seek authorization to obtain receiver's certificates as is reasonably required

and/or necessary to carry out and fulfill the duties and obligations of the Temporary

Receiver noted herein.

## IX.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by

the Temporary Receiver shall be entitled to reasonable compensation for the services they render

to the receivership estate, from the assets now held by, in the possession or control of, or which

may be received from the Receivership Defendants.  The Temporary Receiver shall file with this

Court and serve on the parties a request for payment, outlining the services rendered and the

related fees and expenses. The Temporary Receiver shall not increase his or her fee rate billed to the receivership estate without prior approval of this Court.

## X.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk of this Court, within three (3) days of appointment, a bond in the sum of $25,000.00, conditioned that the Temporary Receiver will well and truly perform the duties of the office and duly account for all money and property that he or she marshals. The Temporary Receiver serves as an officer of this Court solely in a representative capacity and is not personally liable for any actions taken in conformity with the duties and responsibilities set forth herein or pursuant to any statute, regulation or other legal authority.

## XI.  DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, Defendants and any other person or entity served with a copy of this Order, shall immediately or within such time as permitted by the Temporary Receiver in writing, deliver or transfer possession, custody and control of the following to the Temporary Receiver:

A.  All assets of the Receivership Defendants;

B.  All documents of the Receivership Defendants, including, but not limited to, all books and records, financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

C.  All keys, computer passwords, entry codes, and combinations to locks necessary

to gain or to secure access to any of the assets or documents of the Receivership

Defendants, including but not limited to, access to the Receivership Defendants' business

premises, means of communication, accounts, computer systems, or other property; and

D.      Information identifying all accounts, employees, properties or other assets or

obligations of the Receivership Defendants.

## XII.  DUTY TO COOPERATE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants and all other persons or entities served

with a copy of this Order shall cooperate fully with and assist the Temporary Receiver.  This

cooperation and assistance shall, include, but not be limited to, providing any information to the

Temporary Receiver that the Temporary Receiver deems necessary to exercising his or her

authority; providing any password required to access any computer or electronic files in any

medium; and discharging the responsibilities of the Temporary Receiver under this Order, and

advising all persons who owe money to the Receivership Defendants that all debts should be

paid directly to the Temporary Receiver.

## XIII.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a),

31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d)

and (f), 30(a)(2)(A)-(C), and 31(a)(2)(A)-(C), the parties are granted leave, at any time after

service of this Order to:

A.      Take the deposition of any person or entity, whether or not a party, for the

purpose of discovering the nature, location, status, and extent of the assets of Defendants,

and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action; and

B.      Demand the production of documents from any person or entity, whether or not a party, relating to the nature, status, and extent of the assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action.

Three (3) days' notice shall be deemed sufficient for any such deposition, five (5) days' notice shall be deemed sufficient for the production of any such documents, and twenty-four (24) hours' notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data. The provisions of this section shall apply to both parties to this case and to non-parties. The limitations and conditions set forth in the Federal Rules of Civil Procedure 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this section. Any such depositions taken pursuant to this section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of this Court, including those set

forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this section, shall be sufficient if made by United States first class mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of a party, by any law enforcement agency, or by private process server.

## XIV.   FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that each Defendant shall, within five (5) days of service of this Order, prepare and provide to the Temporary Receiver and counsel for the Commission:

A completed financial statement, accurate as of the date of service of this Order upon Defendants, which shall include all financial information requested by the Financial Statement of Individual Defendant, appended as Attachment A, and Financial Statement of Corporate Defendant, appended as Attachment B,[2] for each business entity under which each conducts business, or of which each is an officer or member, and for each trust of which each is a trustee. The financial statements shall be accurate as of the date of entry of this Order and shall be verified under oath.

## XV.   CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Commission may obtain credit reports concerning Defendants Latrese Hargrave and Kevin Hargrave pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such report is requested shall provide it to the Commission.

---

[2]     Defendants need not respond to those portions of Attachments A and B that have been stricken by the Court.

## XVI.  PRESERVE RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants and each of their officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from:

A.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, website designs and texts, telemarketing scripts or outlines, brochures, manuals, banking records, customer lists, customer files, customer payment histories, invoices, telephone records, ledgers, payroll records, or other documents of any kind, including electronically stored information, in their possession, custody, or control that relate to the business practices or business or personal finances of any Defendant from October 23, 2003, to the present;

B.      Failing to create and maintain books, records, accounts, bank statements, accountants' reports, cash disbursement ledgers, cash receipt ledgers, general journals, general ledgers, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, completely, and fairly reflect the Defendants' incomes, disbursements, transactions, and use of funds; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited

partnership, joint venture, sole proprietorship, or corporation, without first providing

Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the

address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers, and employees; and (4) a detailed

description of the business entity's intended activities.

## XVII. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of the Court, during the pendency

of the Temporary Receivership ordered herein, Defendants and all other persons and entities

hereby are stayed from taking any action to establish or enforce any claim, right or interest for,

against, on behalf of, in, or in the name of the Receivership Defendants, the Temporary

Receiver, Receivership assets, or the Temporary Receiver's duly authorized agents acting in their

capacities as such, including, but not limited, to the following actions:

A.      Commencing, prosecuting, litigating or enforcing any suit, except that actions

may be filed to toll any applicable statute of limitations;

B.      Accelerating the due date of any obligation or claimed obligation, enforcing any

lien upon, or taking or attempting to take possession of, or retaining possession of,

property of the Receivership Defendants or any property claimed by the Receivership

Defendants, or attempting to foreclose, forfeit, alter or terminate any of the Receivership

Defendants' interests in property, whether such acts are part of a judicial proceeding or

otherwise;

C.      Using any form of set-off, alleged set-off, or any form of self-help or executing

or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Defendants, or the Temporary Receiver, or any agent of the Temporary Receiver; and

D.     Doing any act or thing to interfere with the Temporary Receiver taking control, possession, or management of the property subject to the Receivership, or to in any way interfere with the Temporary Receiver or the duties of the Temporary Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants.

This section does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

**IT IS FURTHER ORDERED** that, in light of the appointment of the Temporary Receiver, the Receivership Defendants are hereby prohibited from filing a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XVIII. CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

**IT IS FURTHER ORDERED** that, for purposes of this Order, all correspondence and pleadings to the Commission shall be addressed to:

Jessica D. Gray, Esq.
Federal Trade Commission
225 Peachtree Street, Suite 1500

Atlanta, Georgia 30303
(404) 656-1350 (telephone)
(404) 656-1379 (facsimile)

Notice may be provided by email to jgray@ftc.gov.

## XIX.  PRELIMINARY INJUNCTION HEARING

This matter is set for a hearing to determine whether to convert this temporary restraining order into a preliminary injunction on **MONDAY, NOVEMBER 3, 2008**, at **2:00 p.m.**, before the undersigned at the United States Courthouse, 300 N. Hogan Street, Courtroom No. 10B, Tenth Floor, Jacksonville, Florida, 32202.[3]  Counsel shall appear in person and telephonic appearances will not be permitted.

In accordance with Local Rule 4.06, Plaintiff shall file its motion for preliminary injunction, along with any affidavits or evidentiary materials, no later than **OCTOBER 27, 2008**, and Defendants shall file their briefs, affidavits, and any other evidentiary materials concerning their position on the request for preliminary injunction by **OCTOBER 29, 2008**.

Plaintiff is directed to comply with Local Rule 4.05(b)(5) and, if it has not done so already, immediately effect service of process on all Defendants in accordance with Rule 4 and to provide Defendants with all of the materials required by the Local Rules.  This service shall be accomplished no later than **OCTOBER 27, 2008**.  Plaintiff's failure to comply with the requirements and deadlines set forth herein may result in the dissolution of this Temporary Restraining Order.

---

[3]    The parties are reminded that photo identification is required to enter the United States Courthouse.  In addition, cellular telephones and laptop computers are prohibited in the Courthouse.

## XX.    DURATION OF TEMPORARY RESTRAINING ORDER

This Temporary Restraining Order is reasonable and necessary to preserve the status quo and stop Defendants from engaging in illegal activities.  In issuing this Order, however, the Court understands that Defendants have not yet been given a full opportunity to be heard and emphasizes that it is not making a final decision on any request for preliminary injunctive relief. Nonetheless, the Court is convinced that issuing the Temporary Restraining Order until a full hearing can be held on Plaintiff's request for preliminary injunctive relief is the lawful and proper action in this case.

**DONE AND ORDERED** at Jacksonville, Florida, this <u>23rd</u> day of October, 2008, at 5:11 p.m.

MARCIA MORALES HOWARD
United States District Judge

lc1
Copies to:

Counsel of Record